#24937-rev & rem-SLZ

**2009 SD 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BELVA SMITH, BONNIE DREYER,
and JAMES CARLON,                                    Plaintiffs and Appellees,

    v.

TRIPP COUNTY, SOUTH DAKOTA,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
TRIPP COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE ROBERT A. MILLER
Retired Justice, sitting as a circuit court judge

\* \* \* \*

JAMES E. CARLON                              Attorney for plaintiffs
Pierre, South Dakota                          and appellees.

JEAN M. MASSA
Tripp County State's Attorney                 Attorney for defendant
Winner, South Dakota                          and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2009

OPINION FILED **04/15/09**

#24937

ZINTER, Justice

[¶1.]	Belva Smith, Bonnie Dreyer, and James Carlon (hereinafter "Taxpayers") appealed Tripp County's assessment of their agricultural property to the Office of Hearing Examiners.  Following a trial *de novo*, the hearing examiner concluded that Taxpayers failed to meet their burden of proving that the assessment exceeded true and full value.  The circuit court reversed the hearing examiner on a different issue.  The circuit court concluded that Taxpayers' valuation "best complied" with statutory requirements that the County's assessment consider the capacity of the land to produce agricultural products.  Because we conclude that Taxpayers failed to meet their threshold burden of establishing a prima facie case that the County's assessment exceeded true and full value,[1] we reverse the circuit court and affirm the hearing examiner.

*Facts and Procedural History*

[¶2.]	Taxpayers each own three quarter sections of agricultural property in Tripp County, totaling approximately 1,440 acres.  The property is rented and operated together.  The Tripp County Director of Equalization ("Director") assessed the property for real estate tax purposes at $735,202 for the 2005 tax year.  The Director's assessment was based on a comparable sales and soils approach.  This approach examined comparable agricultural sales in the county, determined the average value of the best agricultural property, and then utilized a soil survey to

---

1.	Taxpayers have not argued that the County's assessment lacked uniformity in class or was discriminatory.  Consequently, we limit our analysis to whether the assessment exceeded true and full value.

value all agricultural property according to its relative capacity to produce agricultural products when compared to the value of the best property. Conversely, Taxpayers valued their property at $381,696, utilizing an income approach. Taxpayers' income approach capitalized the average net income after taxes that they estimated they would have received from the acres that produced cash crops.

[¶3.] Taxpayers appealed the Director's assessment to the Tripp County Board of Equalization. The Board affirmed the Director's assessment. Taxpayers then appealed to the Office of Hearing Examiners. Taxpayers' only witness expressing their valuation opinion was Taxpayer James Carlon.[2] Carlon argued that the Director's assessment did not consider the property's capacity to produce agricultural products. He testified that his income approach considered capacity to produce because it was based on government records of average crop yields for those acres that produced cash crops. He testified that following the identification of average yields, he estimated crop prices to determine gross income. He then deducted production costs (as determined by a person with experience in that area) and real property taxes to determine net income. Carlon finally capitalized Taxpayers' estimated net revenues at a rate of five percent. This approach did not

---

2. The record does not reflect that any party raised the issue of Carlon testifying as a witness and representing the other two taxpayers in these proceedings. *See* SDCL 19-1-3 (providing in relevant part that "[w]hen an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial").

value approximately 300 acres that did not produce crops.[3] It also did not consider any sales of comparable agricultural property.

[¶4.] The Director argued that by employing her comparable sales and soils survey method, she captured both comparable sales and capacity to produce. The Director testified that after certain sales were excluded, she calculated the average top selling price of the best agricultural property in the county. Soils in the county were then arrayed based on their agricultural productivity with the best soil receiving a rating of one and lesser soils receiving a pro rata fraction of the rating assigned to the best soils. Assessed valuation was then determined based on government agencies' records of the soil for each property.[4]

---

3. Carlon testified: "We look at the value based on the capacity of [a quarter section of land] to produce, and it is affected, of course, by the base acres, the number of acres that can produce crops." Taxpayers' opinion of value assigned no value to non-cash-crop acres. Rather, the Taxpayers' appraisal looked at each quarter section as a whole (a unit) to estimate the net revenue that could be produced from the entire quarter. It is undisputed that, for a variety of reasons, substantial acres in some quarters were not used to produce cash crops.

4. The Director further explained:

> We value the ag land reflecting [SDCL] 10-6-33.1, 10-6-33.2, and 10-6.33.7. We use the detailed soil survey method which is based on physical, chemical landscape, characteristics of the soil, and also the soil survey is based on the productivity of the soil, which is what we use to compare and rate them.
>
> The general procedure is when we develop the percentage rating for each soil map unit. Then we assign a dollar value to each map unit based on our top dollar sales. And then we calculate the dollar value for each individual parcel. And that is how we do it for every taxpayer in Tripp County who is an ag landowner.

(continued . . .)

[¶5.]    In the hearing examiner's decision following the trial *de novo*, he found that Taxpayers "failed to present sufficient evidence to show the assessed valuation of the subject property [was] in excess of its true and full value[.]"  According to the hearing examiner, Taxpayers' evidence was insufficient because Taxpayers did not provide independent sales figures to establish market value, they did not value the entire property, and they did not consider any other statutory factors.

[¶6.]    Taxpayers appealed this decision to circuit court.  Judge Max Gors reversed the hearing examiner and remanded to the Director for another assessment.  In his decision, Judge Gors did not focus on the basis of the hearing examiner's decision examining the Taxpayers' showing.  Instead, Judge Gors focused on the basis of the Director's approach to value, concluding that the Director's use of a soil survey was an acceptable factor to be considered, but that capacity of the property to produce was not adequately considered.  Notably, although rejecting the Director's assessment, the court neither adopted Taxpayers' valuation nor considered whether the Taxpayers' evidence suggested an assessment that exceeded true and full value.  On the contrary, the court only concluded that "[t]he value of the land arrived at by the County of $735,202 *may* exceed the fair market value of the property when the property is valued taking into consideration its capacity to produce agricultural products." (Emphasis added.)

_____

(. . . continued)

We take into consideration the soil capability and the sales to develop final value.

For the reasons hereafter explained, we express no opinion whether the Director's methodology complies with statutory requirements.

-4-

[¶7.]    Following Judge Gors' remand, County's reappraisal was essentially identical to the first, using the same valuation methodology. The only difference was that it further explained the Director's argument that her methodology adequately considered agricultural capacity to produce in accordance with SDCL ch 10-6.

[¶8.]    After County submitted its second appraisal, Taxpayers moved the court, Judge Robert A. Miller presiding,[5] for the imposition of judgment in their favor because none of the evidence had changed. Judge Miller granted Taxpayers' motion. Although he reversed the hearing examiner, Judge Miller did not enter findings of fact and conclusions of law addressing the correctness of the hearing examiner's decision. Judge Miller issued a written decision indicating: "I am of the opinion that Taxpayers' appraisal in the amount of $381,696 best complies with and takes into account the mandates of the statutes and judicial decisions." Consequently, unlike Judge Gors' decision, Judge Miller adopted the Taxpayers' valuation. The judgment stated:

> [T]he full and true value of the subject property . . . is $381,696 as set forth in the [T]axpayers' appraisals, and the court finds that the [T]axpayers' appraisals best comply with and take into account the mandates of state statutes and judicial decisions, including without limitations the capacity of the subject property to produce agricultural products[.]

---

5.    Judge Gors had retired at this time. Robert A. Miller, retired Justice, was assigned to hear the case.

*Standard of Review*

[¶9.]         This appeal of a county tax assessment was considered at a trial *de novo* before the Office of Hearing Examiners.  Therefore, SDCL ch 1-26 governs review of the appeal.  Butte County v. Vallery, 1999 SD 142, ¶8, 602 NW2d 284, 286-87.  *See also* SDCL 10-11-43 (providing, "[a]n appeal from the Office of Hearing Examiners to circuit court may be taken by the parties to the appeal and intervenors before the Office of Hearing Examiners.  The appeal shall be taken and conducted pursuant to the provisions of chapter 1-26.").  Consequently, the question before the circuit court and this Court is whether *the hearing examiner's* findings of fact are clearly erroneous and whether *his conclusions of law* are correct:

> Under SDCL 10-11-42.1, the hearing examiner tries the issues de novo.  On appeal[,] both the circuit court and this Court review that decision as set forth in SDCL 1-26-36.  This standard of review requires us to accord great weight to the findings and inferences made by the hearing examiner on factual questions.  "When the issue is a question of fact, we ascertain whether the administrative agency was clearly erroneous."  When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable.

*Butte County,* 1999 SD 142, ¶8, 602 NW2d at 287 (citations omitted).

[¶10.]        This dispute involves the taxable value of Taxpayers' property.  Generally, taxable "[v]alue is a question of fact and [therefore] the [factfinder's] determination will only be overturned if it is clearly erroneous."  West Two Rivers Ranch v. Pennington County, 1996 SD 70, ¶6, 549 NW2d 683, 686.  In this case, however, neither judge nor the hearing examiner determined that the disagreement regarding value involved a dispute of fact.  Rather, the hearing examiner focused on the valuation methodology employed by Taxpayers, and the circuit judges focused

on the valuation methodology employed by the Director. All three decisions were based on the legal question whether the respective assessment methodologies complied with statutory requirements. The interpretation of statutes and the application of statutes to given facts is a question of law (or a mixed question of law and fact) that we review *de novo*. Matter of State and City Sales Tax Liab. of Quality Serv. Railcar Repair, 437 NW2d 209, 211 (SD 1989); *see also West Two Rivers Ranch*, 1996 SD 70, ¶6, 549 NW2d at 685. We therefore review the hearing examiner's decision *de novo*. *See Butte County*, 1999 SD 142, ¶8, 602 NW2d at 287.

*Decision*

[¶11.]     The Constitution of South Dakota, Art. XI, Section 2, requires that "(t)axes shall be uniform on all property of the same class, . . . and the valuation of property for taxation purposes shall never exceed the actual value thereof." In carrying out this provision, the Legislature has directed that "[a]ll property shall be assessed at its true and full value in money." SDCL 10-6-33. Therefore, "when excessive valuation has been shown the owner is entitled to relief . . . ." Williams v. Stanley County Bd. of Equalization, 69 SD 118, 121, 7 NW2d 148, 150 (1942).

[¶12.]     Throughout these proceedings, Taxpayers have taken the position that the Director's assessment exceeded true and full value because it did not take into consideration the capacity of the land to produce agricultural products. Agricultural property is assessed in accordance with SDCL 10-6-33.1, which provides that the assessment shall be made through the use of comparable sales of agricultural land considering capacity to produce agricultural products as well as

other considerations that can be documented through an analysis of land selling prices.  The statute provides:

> The true and full value in money of agricultural land, as defined by § 10-6-31, which has been in primarily agricultural use for at least five successive years immediately preceding the tax year for which assessment is to be made shall be the *market value* as determined for each county through the *use of all comparable sales of agricultural land based on consideration of the following factors:*
>
> *(1) The capacity of the land to produce agricultural products as defined in § 10-6-33.2; and*
>
> *(2) The location, size, soil, terrain, and topographical condition of the property including but not limited to capability, the land's use, climate, accessibility, and surface obstructions which can be documented through an analysis of land selling prices.*
>
> *The comparable sales that are used* shall be evidenced by an instrument recorded with the register of deeds of the county in which the land is located, if the date of such instrument and the recording date is not more than two years prior to the assessment year.

SDCL 10-6-33.1 (emphasis added).

[¶13.]    The capacity to produce agricultural products is defined in SDCL 10-6-33.2.  At the time the Director completed her assessment in June of 2005, SDCL 10-6-33.2 provided:

> Capacity of land in agricultural use to produce agricultural products *shall be based on average yields under natural conditions, in the case of land producing crops* or plants, and on the average "acres per animal unit," in the case of grazing land; said average shall affect each operating unit and shall be based on the ten-year period immediately preceding the tax year in issue.  *In determining such capacity to produce, the county director of equalization and/or the county board of equalization must take into consideration yields, and/or carrying capacity, as determined by the soil conservation service, the agricultural stabilization and conservation service, the extension service, federal land bank and private lending agencies dealing with land production capacities.*

(Emphasis added.) (Rewrote July 1, 2005, SD Sess Laws, ch 57, § 1).[6]

[¶14.] At trial and on appeal, Taxpayers have argued that the Director's assessment did not take into account their land's capacity to produce agricultural products as required by these statutes. In response, County first argues that Taxpayers failed to overcome presumptions which favor the Director's assessment. County relies on *Richter Enter., Inc. v. Sully County*, 1997 SD 61, ¶7, 563 NW2d 841, 843, in which this Court repeated two often-stated presumptions:

> [T]here is a presumption that tax officials act in accordance with the law and not arbitrarily or unfairly when assessing property. Taxpayer also has the burden of overcoming the presumption that Director's value was correct.

(Citations omitted.) However, the presumption that the Director's value was correct has been superseded by statute. *See* SDCL 10-3-16 (2000) (providing that "[n]o

---

6. The replacement statute provides:

> The capacity *of agricultural land to produce agricultural products shall be based on average yields under natural conditions for land producing crops* or plants and on the average acres per animal unit for grazing land. The average shall affect each operating unit and shall be based on the ten-year period immediately preceding the tax year in issue. *In determining the capacity to produce, the county director of equalization and the county board of equalization shall consider yields, the extent to which the land is able to be tilled or is nontillable based upon soil type, terrain, topographical, and surface conditions, and animal unit carrying capacity, as determined by the natural_resources conservation service, farm credit services of America, farm service agency, the extension service, and private lending agencies dealing with land production capacities.*

SDCL 10-6-33.2 (2005) (emphasis added).

legal presumption of correctness attaches to the [D]irector's assessed valuation of property").[7] *See also* Beals v. Wagner, 2004 SD 115, ¶7, n4, 688 NW2d 415, 418.[8] Therefore, the Director's reliance on a presumption of correctness is misplaced.

[¶15.]     Nevertheless, the hearing examiner did not rely on a presumption of correctness in determining that Taxpayers had failed to meet their burden of proof. Rather, the hearing examiner rejected the Taxpayers' appeal because Taxpayers "failed to present sufficient evidence to show the assessed valuation of the subject property [was] in excess of its true and full value, lacked uniformity in the class or was discriminatory." The examiner concluded the Taxpayers' evidence of value was insufficient as a matter of law because: "Taxpayers presented their limited agricultural productivity figures, but did not supply any independent sales figures to establish a market value of the subject property, nor did they even value the entire property." We agree. Taxpayers' evidence of value considered only estimated average net income from cash-crop acres but no other statutory requirement.

[¶16.]     We observe that, notwithstanding any alleged deficiencies in the Director's assessment, the first question is whether Taxpayers' evidence constituted a prima facie showing of entitlement to relief. The hearing examiner correctly recognized that before he could grant relief, Taxpayers were required to make a

---

7.     Although the presumption of correctness was abrogated, we note that the statute did not abrogate the presumption that tax officials act in accordance with the law and not arbitrarily or unfairly when assessing property.

8.     In *Burke v. Butte County*, 2002 SD 17, ¶22, 640 NW2d 473, 479, we did not consider this statute, thereby incorrectly concluding that the Director was still entitled to the presumption of correctness.

showing that the Director's assessment was in excess of true and full value. *See Williams*, 69 SD at 121, 7 NW2d at 150 (concluding that a property owner is entitled to relief when the owner shows that the Director's valuation was excessive). *See also* Sheraton-Midcontinent Corp. v. Pennington County, 77 SD 554, 558, 95 NW2d 892, 894 (1959) (concluding that "[t]he burden of proof . . . is on the complaining taxpayer to prove that an assessment is excessive").

[¶17.]     In reviewing that question, if the party with the burden of proof (the taxpayer) fails to establish a prima facie case, we do not even reach the validity of the non-moving party's (the County's) case. As explained in *Midzak v. Midzak*, a plaintiff in a civil proceeding asserting the affirmative of an issue "is required to establish a prima facie showing, meaning sufficient evidence which would entitle the plaintiff to recover *if the defendant produced no evidence.*" 2005 SD 58, ¶19, 697 NW2d 733, 738 (emphasis added). Consequently, to overturn the Director's assessment, Taxpayers must have made a prima facie showing that the assessment exceeded true and full value without considering the Director's methodology. As we have previously concluded, a taxpayer challenging excessive valuation must show more than a failure to comply with statutory mandates:

> Noncompliance with mandatory statutes and excessive valuations [by the county assessor] are not sufficient findings to grant a taxpayer relief. Findings must specifically show that if there was noncompliance with statutory mandates . . . the value is in excess of true and full value[.]

Knodel v. Bd. of County Comm'rs of Pennington County, 269 NW2d 386, 390 (SD 1978).

[¶18.]        In this case, Taxpayers failed to establish a prima case of an assessment in excess of true and full value. As the hearing examiner correctly concluded, Mr. Carlon's opinion was insufficient as a matter of law for two reasons. First, his opinion was not based on the fundamental requirement that an assessment be based on comparable sales. *See* SDCL 10-6-33.1 (providing, "that the true and full value in money of [qualifying] agricultural land . . . shall be the market value as determined for each county through the *use of all comparable sales* of agricultural land based on consideration of the following factors[, including the] capacity of the land to produce agricultural products"). Taxpayers conceded that his valuation opinion was not based on the comparable sales *requirement* of SDCL 10-6-33.1. After first explaining his income approach to valuation, Mr. Carlon indicated that in appraising agricultural property under the statutes at issue, production capacity "has to be used to qualify or disqualify *the comparable sales*." (Emphasis added.) Yet Taxpayers' valuation opinion did not consider any comparable sales.

[¶19.]        There is also no dispute that by not utilizing comparable sales, and by focusing on net income from only those acres that produced cash crops, Taxpayers' appraisal excluded approximately 300 of the 1,440 acres at issue. Taxpayers attempt to justify this omission by arguing that each quarter section must be considered as one operating "unit." Taxpayers rely on SDCL 10-6-33.2, which provides that "the capacity of agricultural land to produce agricultural products shall be based on average yields under natural conditions . . . [as] said average shall affect each operating unit . . . ." This language does not, however, mean that an assessment may ignore non-crop acres in each operating unit no matter what

their use or value. On the contrary, "the farming practices of the individual landowners are not to be considered when assessing the land's value. Farm management decisions cannot change the earth's value for taxation purposes." *Butte County*, 1999 SD 142, ¶16, 602 NW2d at 289. In this case, Taxpayers did not even suggest that the omitted 300 acres had no value. Their sole reliance on a net income approach simply ignored the value of a substantial part of the property at issue.

[¶20.] In *Yadco, Inc. v. Yankton County*, we noted that every permissible element that can reasonably affect value must be considered for property to be assessed. 89 SD 651, 654-55, 237 NW2d 665, 667 (1975). "Stated another way, it is the duty of the assessor to use all of those techniques and facts which accurately reflect 'full and true' value and to reject those which do not." *Id*. (citations omitted). In this case, Taxpayers' failure to even consider comparable sales and all assessed acres rendered their opinion so insufficient it did not establish a prima facie case of valuation exceeding true and full value.[9] And, because Taxpayers failed to

_____

9. Although the Taxpayers' testimony was insufficient in this case, we do not depart from our previous holdings that a landowner may testify as to the value of his or her land subject only to the same requirements as an expert giving an opinion on valuation. Coyote Flats v. Sanborn County Comm'n, 1999 SD 87, ¶22, 596 NW2d 347, 352 (citing City of Sioux Falls v. Johnson, 1999 SD 16, ¶13, 588 NW2d 904, 908 (providing that "[t]he landowner is presumed to have 'special knowledge of the property, its income producing capacity, and other pertinent traits sufficient to render an opinion as to value.'")). *See also* State Highway Comm'n v. Beets, 88 SD 536, 540, 224 NW2d 567, 569 (1974) (providing that "[n]eighboring property owners usually are permitted to express [an opinion on value] on the theory that being [neighboring] owners they are necessarily acquainted with [local] values." (quoting State Highway Comm'n v. Hayes Estate, 82 SD 27, 140 NW2d 680 (1966))).

establish a prima facie case, the hearing examiner correctly concluded that they were not entitled to relief.

[¶21.]        Reversed and remanded for entry of judgment affirming the hearing examiner's decision.

[¶22.]        GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.