#31020-r-SPM
**2025 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

THEA PALLANSCH, KARIE M.
GEYER, and JENNIFER NELSON,                    Plaintiffs and Appellants,

v.

ROBERTS COUNTY, SOUTH DAKOTA,                  Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARSHALL LOVRIEN
Judge

* * * *

GORDON P. NIELSEN of
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota                         Attorneys for plaintiffs and
                                               appellants.


DYLAN D. KIRCHMEIER
Roberts County State's Attorney

TESSA M. DALBERG
Deputy State's Attorney
Sisseton, South Dakota                         Attorneys for defendant and
                                               appellee.


* * * *

CONSIDERED ON BRIEFS
AUGUST 26, 2025
OPINION FILED **09/17/25**

#31020

MYREN, Justice

[¶1.]    Thea Pallansch, Karie Geyer, and Jennifer Nelson (Landowners) own agricultural properties in Roberts County. The properties are enrolled in the federal wetlands reserve program and are subject to perpetual conservation easements (perpetual wetlands reserve easements) that permanently prohibit most agricultural activities. The Roberts County Director of Equalization (the Director) assessed the Landowners' properties using the productivity-based method of valuation prescribed in SDCL chapter 10-6. The Landowners claim the Director's application of the statutory valuation procedures resulted in a valuation that exceeded the properties' actual values in violation of the South Dakota Constitution. The Office of Hearing Examiners (OHE) and the circuit court affirmed the Director's assessment. We reverse and remand.

**Factual and Procedural Background**

[¶2.]    The Landowners own two adjacent tracts of real property in Roberts County, South Dakota. One consists of approximately 107.87 acres, and the other approximately 48.7 acres. Before the Landowners purchased their properties, they were owned by Frank Rinas. While he owned the land, Rinas granted the federal government perpetual wetland reserve easements that significantly limit the agricultural use of the land. Among other things, the easements prohibit "planting or harvesting any crop"; "any activities which adversely impact or degrade wildlife cover or other habitat benefits, water quality benefits, or other wetland functions and values of the easement area"; and "building, placing, or allowing to be placed

-1-

structures on, under, or over the easement area, except for structures for undeveloped recreational use[.]"

[¶3.] The properties were appraised at $897 per acre following Rinas' death in 2017. The personal representative placed the properties on the market but was unable to find a purchaser. The Landowners eventually purchased the properties for $20,000 in 2019 (approximately $128 per acre). Pallansch testified that they were aware of the existence of the perpetual wetlands reserve easements when they purchased the properties. The properties have not been appraised by a certified real estate appraiser since the 2017 appraisal.

[¶4.] Before 2008, tax assessors used a market-value approach to determine the assessed value of agricultural property. In 2008, the Legislature adopted a productivity-based method for determining the value of agricultural land for tax purposes. *See* SDCL 10-6-127 to -133; *Trask v. Meade Cnty. Comm'n*, 2020 S.D. 25, ¶¶ 8–16, 943 N.W.2d 493, 496–98 (describing the changes the Legislature made and how productivity-based valuation functions).

[¶5.] For many years, Roberts County had a policy of valuing all agricultural property subject to a perpetual wetlands reserve easement at a flat rate of $450 per acre for tax purposes. Because of a circuit court decision that held that the Director had no authority to adjust agricultural land values based on a perpetual wetlands reserve easement, the Director began assessing such properties using the productivity-based method set forth in statute.

[¶6.] In 2023, the Director used the statutory productivity-based method of valuation to reassess the first parcel at $2,255.54 per acre and the second parcel at

$1,678.77 per acre.  The Landowners appealed the assessment to the local township board of equalization and then to the Roberts County Board of Equalization; both affirmed the Director's assessment.

[¶7.]         The Landowners appealed to OHE.  The proceedings before OHE and the circuit court were convoluted.[1]  At the second administrative hearing before OHE, the Director testified about her familiarity with the productivity-based method of property valuation and how she conducted the valuation of the properties in this case.  The Director explained that, under SDCL 10-6-131, a landowner may not receive a downward adjustment to the assessed value of their agricultural property based on the presence of a perpetual wetland reserve easement.  Roberts County did not present any evidence to establish the market value of the properties.

[¶8.]         The Landowners called three witnesses at the administrative hearing. Pallansch testified that she was not claiming that Roberts County had not complied with the valuation procedures set forth in SDCL chapter 10-6.  Instead, she argued that the application of those statutory valuation procedures resulted in a valuation that exceeded the properties' actual value in violation of the South Dakota Constitution.

---

1.    At OHE, the case was originally heard by administrative law judge (ALJ) Ryan Darling, who affirmed the Director's assessment.  The Landowners appealed and the circuit court remanded the matter to OHE with direction for the ALJ to enter more thorough factual findings based on the existing record.  Unfortunately, ALJ Darling died before completing the additional findings.  ALJ Catherine Williamson took over the case, conducted a new hearing, and issued a decision affirming the Director's assessment.  The Landowners appealed and it is ALJ Williamson's decision that is under review in this appeal.

[¶9.]     The Landowners' second witness was Tony Valnes, a licensed real estate broker. Valnes testified that he has sold properties subject to wetlands reserve easements in the past and that it is typically more difficult to sell such property as opposed to unencumbered property. He testified that properties with such permanent easements generally sell for "[a]round 850, 800 to 1,000 an acre." He explained that although the restrictions in easements vary, when an easement contains more comprehensive restrictions, "like the subject property we are speaking about today, [they can produce] less income so they have less value." Finally, Valnes testified that he recently oversaw a sale of property subject to a wetlands reserve easement that sold for $1,250 per acre.

[¶10.]     The Landowners' final witness was Gary Hanson, a licensed real estate agent and broker associate. Hanson testified that he was familiar with the subject properties and that he was asked to provide a broker's opinion regarding their value. He explained that the presence of a wetlands reserve easement "devalues [land] considerably." Hanson stated that he agreed with Valnes' testimony and concluded the properties' value was "in the neighborhood of $1,000 per acre."

[¶11.]     In her written decision, the ALJ found that Valnes and Hanson were credible. She also found that "[t]he subject properties have very strict easements, and the properties are difficult to sell in the open market" and that "[a wetlands reserve] easement reduces the number of people who are willing to purchase ag-land with the easement." The ALJ explained that she believed she did not have the authority to adjudicate the constitutional argument presented in the case. The ALJ affirmed the Director's assessment after concluding that the Landowners had failed

to rebut the presumption that the Director had assessed the properties in accordance with the statutory procedure for agricultural property tax assessment.

[¶12.] The Landowners appealed to the circuit court, which also determined that the Director correctly applied the statutory procedure for assessing the value of agricultural property. The circuit court addressed the Landowners' constitutional argument and concluded that only a contemporaneous *appraisal* of the properties could rebut the presumption that the Director's valuation violated the South Dakota Constitution. The circuit court determined the real estate brokers' opinions did not suffice, and that the 2017 appraisal was too old to bear on the current proceedings. The circuit court alternatively determined that even if the brokers' opinions in the case could be considered, they failed to rebut the presumption that the Director complied with the law.

[¶13.] The Landowners appeal, raising two issues: (1) Whether the South Dakota Constitution requires the opinion of a certified real estate appraiser to determine the actual value of real property for tax purposes; and (2) Whether the Landowners' properties were assessed in excess of their actual value in violation of the South Dakota Constitution.

## Standard of Review

[¶14.] Administrative appeals "are procedurally governed by SDCL chapter 1-26." *Pirmantgen v. Roberts Cnty.*, 2021 S.D. 5, ¶ 20, 954 N.W.2d 718, 724. This Court "accord[s] great weight to the findings and inferences made by the hearing examiner on factual questions" and will reverse them only if they are clearly erroneous. *Id.* (quoting *Butte Cnty. v. Vallery*, 1999 S.D. 142, ¶ 8, 602 N.W.2d 284,

287). "When the issue is a question of law, the decisions of the administrative agency and the circuit court are fully reviewable" under the de novo standard of review. *Id.* (citation omitted). Additionally, "[w]e review '[a]n appeal asserting a violation of a constitutional provision [a]s a question of law'" under the de novo standard of review. *Trask*, 2020 S.D. 25, ¶ 8, 943 N.W.2d at 496 (second and third alterations in original) (quoting *Stehly v. Davison Cnty.*, 2011 S.D. 49, ¶ 7, 802 N.W.2d 897, 899).

## Decision

### 1. Whether the South Dakota Constitution requires the opinion of a certified real estate appraiser to determine the actual value of real property for tax purposes.

[¶15.]     In resolving the Landowners' constitutional claim, the circuit court concluded that "to overcome a county assessor's valuation, a taxpayer must, at a minimum, present an appraisal showing that the assessment was erroneous." To support this conclusion, the circuit court cited several of this Court's decisions which it perceived to contain language requiring a taxpayer to offer an appraisal of their property. *See Burke v. Butte Cnty.*, 2002 S.D. 17, ¶ 22, 640 N.W.2d 473, 479 ("In the very least, Burke was required to submit an alternate appraisal establishing that Potter's assessment was in question."); *Richter Enters., Inc. v. Sully Cnty.*, 1997 S.D. 61, ¶ 14, 563 N.W.2d 841, 845 ("Even more compelling is that Taxpayer failed to offer an appraisal different from Director's valuation via expert testimony or otherwise."); *Lincoln Twp. v. S.D. Bd. of Equalization*, 1996 S.D. 13, ¶ 26, 543 N.W.2d 256, 260 ("Without an appraisal showing Seidel's assessment was erroneous, Lincoln Township and Tubbs have not overcome the presumption of

correctness."). The Landowners claim there is no such requirement in the South Dakota Constitution.

[¶16.] In resolving this issue, this Court must begin with the text of the relevant constitutional provision to determine the provision's plain meaning. *See Apa v. Butler*, 2001 S.D. 147, ¶ 35, 638 N.W.2d 57, 70 ("Our Constitution must be construed by its plain meaning[.]"). "If the words and language of the provision are unambiguous, 'the language in the constitution must be applied as it reads.'" *Cid v. S.D. Dep't of Soc. Servs.*, 1999 S.D. 108, ¶ 10, 598 N.W.2d 887, 890 (quoting *In re Janklow*, 530 N.W.2d 367, 370 (S.D. 1995)).

[¶17.] The relevant constitutional provision, S.D. Const. art. XI, § 2, in its entirety, reads:

> To the end that the burden of taxation may be equitable upon all property, and in order that no property which is made subject to taxation shall escape, the Legislature is empowered to divide all property including moneys and credits as well as physical property into classes and to determine what class or classes of property shall be subject to taxation and what property, if any, shall not be subject to taxation. Taxes shall be uniform on all property of the same class, and shall be levied and collected for public purposes only. Taxes may be imposed upon any and all property including privileges, franchises and licenses to do business in the state. Gross earnings and net incomes may be considered in taxing any and all property, and *the valuation of property for taxation purposes shall never exceed the actual value thereof.* The Legislature is empowered to impose taxes upon incomes and occupations, and taxes upon income may be graduated and progressive and reasonable exemptions may be provided.

(Emphasis added.)

[¶18.] The relevant language in S.D. Const. art. XI, § 2, emphasized above, "is clear, certain and unambiguous and our obligation is to apply its plain meaning."

*Janklow*, 530 N.W.2d at 370. The South Dakota Constitution allows the Legislature to impose property taxes based on property valuation, but it specifies that the value of property for taxation purposes may never exceed its actual value. However, there is no constitutional requirement that a taxpayer offer the opinion of a certified real estate appraiser to establish a market valuation. Similarly, SDCL chapter 10-6 does not contain any such requirement. Instead, our decisional law explains that a taxpayer must simply put forth "sufficient evidence to show the assessed valuation was in excess of true and full value[.]" *Trask*, 2020 S.D. 25, ¶ 36, 943 N.W.2d at 501. How a taxpayer makes that showing is not governed by the South Dakota Constitution.

[¶19.] As this Court has recognized, even "a landowner may testify as to the value of his or her land subject only to the same requirements as an expert giving an opinion on valuation." *Smith v. Tripp Cnty.*, 2009 S.D. 26, ¶ 20 n.9, 765 N.W.2d 242, 249 n.9 (citing *Coyote Flats v. Sanborn Cnty. Comm'n*, 1999 S.D. 87, ¶ 22, 596 N.W.2d 347, 352). But a landowner is not limited to providing their own testimony when challenging a tax assessment and may provide the opinions of other qualified witnesses.

[¶20.] The circuit court incorrectly perceived the use of the word "appraisal" in some of this Court's decisions. Neither the South Dakota Constitution nor the rules of evidence requires a landowner to offer the opinion of a certified appraiser to establish the actual value of his agricultural property for the purpose of demonstrating that it has been assessed in excess of its actual value. Credible testimony from any qualified witness is sufficient under both.

### 2. Whether the Landowners' properties were valued in excess of their actual value in violation of the South Dakota Constitution.

[¶21.]    As discussed above, the Legislature is empowered to impose taxes on real property, but not at a rate that exceeds the actual value of the property. S.D. Const. art. XI, § 2. "The terms 'actual value' and 'true and full value' mean the 'market value' of property to be assessed[.]" *Roseland v. Faulk Cnty. Bd. of Equalization*, 474 N.W.2d 273, 275 (S.D. 1991) (citation omitted). Market value is defined as "the price . . . a purchaser willing but not obligated to buy would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." *Id.* (citation omitted); *see also* SDCL 10-6-104 ("As used in this chapter . . . the term, fair market value, and the term, full and true value, mean the price in money that property will bring in a competitive and open market under all conditions requisite to a fair sale between a willing buyer and a willing seller[.]").

[¶22.]    In exercising its taxing authority under the Constitution, the Legislature has divided real property into classes[2] and prescribed methods by which such property is to be valued for tax purposes. SDCL chapter 10-6. The Legislature has adopted a productivity-based method for assessing the value of agricultural

---

2.    *See* SDCL 10-6-110, which provides:

> For the purposes of taxation, all property is hereby classified into the following classes:
>
> (1) Agricultural property;
> (2) Nonagricultural property; and
> (3) Owner-occupied single-family dwellings.

property for tax purposes. *See* SDCL 10-6-127 to -133; *Trask*, 2020 S.D. 25, ¶¶ 8–16, 943 N.W.2d at 496–98 (describing how the productivity-based method of valuation functions).

[¶23.]     Because we presume "that tax officials act in accordance with the law[,]" the taxpayer has the "burden to overcome this presumption by 'produc[ing] sufficient evidence to show the assessed valuation was in excess of true and full value[.]'" *Trask*, 2020 S.D. 25, ¶ 36, 943 N.W.2d at 501 (alteration in original) (citation omitted).

[¶24.]     The Landowners do not dispute that their land is agricultural property for taxation purposes. They also do not claim that the Director incorrectly applied the valuation method prescribed in SDCL chapter 10-6. Their sole claim is that the Director's application of those statutes resulted in a valuation that exceeded the actual value of their properties in violation of the South Dakota Constitution.

[¶25.]     To challenge the Director's assessment, the Landowners called Valnes and Hanson, licensed real estate brokers, who were familiar with the properties and with selling property subject to similar easements. Valnes and Hanson both explained that the presence of the perpetual wetlands reserve easements on the properties significantly decreases their value. They each testified that the value of the properties was significantly lower than the assessed value. They based their opinions on their experience, their study of the properties, and the sale of similar properties. The ALJ found Valnes' and Hanson's testimony to be credible. The Landowners also produced a written report in which Hanson documented how he arrived at his valuation opinion, including documentation relating to a recent sale

of property subject to a wetlands reserve easement. Based on the evidence presented, the ALJ found "[a wetlands reserve] easement reduces the number of people who are willing to purchase ag-land with the easement" and that "[t]he easement on the subject properties prohibits most any activity on the land, including any structure being built, and crops grown or harvested." The evidence in the record supports those factual findings, and they are not clearly erroneous.

[¶26.] Through Pallansch, Valnes, and Hanson, the Landowners put forth evidence, which the ALJ found credible, that demonstrated the Director's valuation of their properties exceeded their actual value. The circuit court was not free to disregard the ALJ's factual findings. *See* SDCL 1-26-36 ("The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact."). Significantly, Roberts County did not present any evidence to establish the actual value of the property. The Director's testimony was strictly limited to proving her compliance with the statutory valuation procedures set forth in SDCL chapter 10-6. The Landowners never contested that process. The circuit court could not and did not find the ALJ was clearly erroneous in her findings about Valnes' and Hanson's valuation testimony. Because the circuit court rejected that testimony, it erred when it concluded that the Landowners had not presented sufficient evidence to establish the actual value of the property for the purpose of determining whether it had been exceeded by the established assessed value.

[¶27.] The ALJ did not make a factual finding as to the actual value of the property based on the evidence presented at that hearing. The entry of such a finding was a necessary part of its adjudicatory role. This "actual value" finding is

needed to determine the actual value for constitutional purposes. The circuit court's order of affirmance is reversed. The case is remanded to the circuit court with direction to remand to the ALJ to make a finding as to actual value based on the evidence already presented. After the ALJ issues a new decision, either party may appeal through ordinary means.

[¶28.]       JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.