#29294-aff in pt & rev in pt-PJD
**2021 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JAMES PIRMANTGEN,                                Petitioner and Appellee,

    v.

ROBERTS COUNTY, SOUTH DAKOTA,         Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
ROBERTS COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

GORDON P. NIELSEN of
Delaney, Nielsen & Sannes, P.C.
Sisseton, South Dakota

JENNIFER M. JORGENSON of
Delaney, Nielsen & Sannes, P.C.
Webster, South Dakota                              Attorneys for petitioner
                                                              and appellee.


KAY F. NIKOLAS
Roberts County State's Attorney
Sisseton, South Dakota                             Attorney for respondent
                                                              and appellant.

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 16, 2020
OPINION FILED **01/27/21**

#29294

DEVANEY, Justice

[¶1.]     After the Roberts County Director of Equalization applied an across-the-board 10% increase to the value of James Pirmantgen's properties for the 2018 tax year, Pirmantgen challenged the tax assessment on 16 properties. The Office of Hearing Examiners held a trial de novo and modified the assessments on four properties but affirmed the County's remaining assessments. Pirmantgen appealed the hearing examiner's decision to the circuit court, and after considering the record evidence and arguments of counsel, the court reversed and modified the hearing examiner's decision. The court set aside the County's across-the-board 10% increase, modified the assessed values for some properties, and ordered the County to assess the remaining properties at the values existing prior to the 10% increase for the tax year in question. The court also ordered that the County reimburse Pirmantgen for any excess taxes collected. The County appeals. We affirm in part and reverse in part.

**Factual and Procedural Background**

[¶2.]     James Pirmantgen owns multiple, non-agricultural properties in the City of Sisseton within Roberts County. For the 2018 tax year, the Director of Equalization applied an across-the-board 10% increase to the value of all non-agricultural property within the County. Pirmantgen challenged the assessment of his properties before the Roberts County Board of Equalization. The Board adjusted the value of two of the properties; one because it was not fit for habitation and another because of fire damage. The Board sustained the remaining

-1-

assessments. Pirmantgen then appealed the Board's decision to the Office of Hearing Examiners (OHE), challenging the valuations of 16 properties.

[¶3.]     At a June 20, 2018 hearing before the OHE, the audio recording device malfunctioned, and as a result there was not a complete transcript of the proceeding. The partial transcript reflects that Pirmantgen appeared at the hearing without the assistance of counsel and did not call any witnesses. The County appeared via its State's Attorney, and Shari Gamber, Director of the Roberts County Board of Equalization, testified. Pirmantgen referred to documents during his argument, but it is not clear whether the documents became part of the administrative record. The administrative record from this hearing contains exhibits submitted by the County related to Pirmantgen's properties and additional exhibits presumably submitted by Pirmantgen.

[¶4.]     Following the hearing, the hearing examiner issued a written decision with findings of fact and conclusions of law upholding the Board's assessment of Pirmantgen's properties. Pirmantgen then obtained counsel and appealed to the circuit court. After counsel learned that only a portion of the proceeding before the hearing examiner had been recorded, he asked the circuit court to remand the matter so a complete record could be made. The County did not object, and the circuit court remanded the matter to the OHE to conduct a new hearing.

[¶5.]     During the new hearing, Director Gamber testified similarly to her testimony at the first hearing. She explained the basis for her decision to apply an across-the-board 10% increase in value on all non-agricultural property in Roberts County. In particular, she testified that the properties in Roberts County, including

Pirmantgen's, had not been systematically reappraised since the last County-wide reappraisal in 1994 and 1995. She explained that she was working with the South Dakota Department of Revenue to get the property valuations up to date and had created a seven-year plan to systematically reappraise all property in Roberts County. She noted that in 2021, the County would reappraise the properties in the City of Sisseton where Pirmantgen's properties were located. However, in the meantime, she completed a market analysis of properties sold in Sisseton in 2017 to determine whether the existing values of property in the County, when compared to the values at which properties sold in 2017, met the median level of assessment as required by statute (at least 85% of market value). Based on this market analysis, she learned that the values of non-agricultural property in the County, when compared to the values at which properties were selling for on the market, resulted in a median level of assessment of 62.3%. She then testified that because SDCL 10-3-41 requires the median level of assessment to be at least 85% of market value as determined by the Department of Revenue, she raised the valuations for all non-agricultural property within the County by 10%.

[¶6.]     The Director also testified specifically about Pirmantgen's properties. She acknowledged that before increasing the value of his properties by 10%, she did not personally inspect his properties. However, when asked whether she had used a cost approach program called "Marshall & Swift" in valuing Pirmantgen's properties prior to November 1, 2017, she responded, "Yes." When asked if she used a market approach to value the land, she also replied, "Yes." Yet she admitted (with respect to the market approach) that she did not compare individual sales to

Pirmantgen's properties, and also admitted (with respect to the cost approach) that she did not adjust the value of the properties for economic obsolescence or depreciation. When explaining her valuation of the properties, she stated, "[T]his is a market adjustment[;] it is not an individual assessment." The State's Attorney directed her to the exhibits related to each of Pirmantgen's properties and asked whether the documents "reflect true and correct values that you assessed the properties at prior to November 1st or on November 1st, 2017." The Director replied, "Yes."

[¶7.] During cross-examination, Pirmantgen questioned the Director about her use of the cost and market approaches, and she admitted she did not individually value Pirmantgen's properties for the 2018 tax year under those approaches. She testified that she "compared the whole town as a whole." However, she explained that when she reappraises the properties in Sisseton in 2021, she will break the properties into different categories, look at comparables for similar properties, and then do an individual assessment of the properties in town, which "will be a more true and fair and a more comparable based assessment than the market approach is."

[¶8.] The Director further acknowledged on cross-examination that there was no way to know for sure whether all non-agricultural property in the County had increased 10% in value. However, she claimed that "on the flip side, [she] had sales showing that in Sisseton" there were "good sales to accommodate that market adjustment." She also testified that she believed Pirmantgen's property values had increased by 10% "on average." When asked whether someone from the

-4-

Department of Revenue told her to apply an across-the-board 10% increase, she testified: "No. I did the 10 percent myself. I needed to make a market adjustment . . . ."

[¶9.] To refute the County's assessed valuations, Pirmantgen offered testimony from Tony Valnes, a real estate broker for northeastern South Dakota whose main office is in Sisseton. Valnes's testimony related only to six of Pirmantgen's 16 properties. He indicated that he had identified comparable sales and personally inspected the six properties to arrive at his stated valuations, which were lower than the County's assessed values on all but one of the six properties. Valnes's six valuations as compared to the County's valuations are reflected in the table below.

| Parcel Number | County Assessment after 10% increase | Valnes's Appraisals |
|---|---|---|
| 5929 | $37,104 | $20,000 |
| 4466 | $35,346 | $20,000 |
| 8426 | $44,976 | $18,000 |
| 2202 | $27,380 | $16,000 |
| 6346 | $18,865 | $20,000 |
| 14355 | $35,120 | $12,500 |

[¶10.] On cross-examination, the State's Attorney asked Valnes whether the market value of properties in Sisseton had increased, decreased, or stayed the same in the past 15 years, and more specifically, whether the market had increased at least 10%. He disagreed that there had been an overall increase in the value of properties across the board in Sisseton. In his opinion, "[s]ome properties did [increase], some properties could be in worse condition. You have to take each individual property and look at it . . . . The only way you can determine its value is based on comparable sales of what things sell for on the open market."

[¶11.]        Following the hearing, the hearing examiner issued a written decision with findings of fact and conclusions of law.  The decision identified the parcel number for each challenged assessment and the final values adopted by the Board.  The hearing examiner noted that a County-wide reappraisal had not been performed since 1994 and 1995; and for the 2018 tax year, the County raised the value of all properties by 10% in an attempt to reach the 85% median level of assessment required by statute.  The examiner further found that in valuing Pirmantgen's properties, the Director "considered the cost, market (sales comparison) and income approaches" and used "the cost method to value the structures and the market approach to value the land."

[¶12.]        The hearing examiner affirmed all but four of the County's assessments.  The examiner declined to modify the values for two parcels appraised by Valnes, determining that the County's assessments were "not unreasonable" because the County's assessed values for these two properties were similar to their most recent purchase prices.  However, the hearing examiner modified the values for three properties in accord with Valnes's appraisals.  The examiner also modified the County's value for one other property, but rather than accepting Valnes's appraisal for this one, the examiner determined that the most recent purchase price for the property reflected a more reasonable value.

[¶13.]        Pirmantgen appealed the hearing examiner's decision to the circuit court.  His statement of issues included general claims as to "[w]hether the subject property was assessed higher than market value and/or higher than the comparable property[.]"  He also challenged whether the assessments were equitable and

uniform as required by law, and more specifically whether the County's assessments, as affirmed by the hearing examiner, were clearly erroneous, in violation of constitutional and statutory provisions, and arbitrary, capricious, or characterized by an abuse of discretion. The County did not appeal any aspect of the hearing examiner's decision.

[¶14.]     In his brief to the circuit court, Pirmantgen related his issues as: (1) whether the County properly assessed his property; and (2) whether the County's assessment lost its presumption of validity when the Director failed to follow the statutory dictates. He alleged that multiple findings by the hearing examiner were clearly erroneous and not supported by the record. He further claimed that he presented sufficient evidence to show that the valuations of his properties were in excess of full and true value. Finally, he asserted that because the Director did not view his properties and did not follow statutory commands in assessing his properties, no presumption of validity could attach to the County's assessments.

[¶15.]     In his request for relief, Pirmantgen asked the circuit court to reverse the hearing examiner's decision upholding the County's 10% market adjustment and require the County to reassess his properties in accordance with applicable law. Alternatively, he requested that the circuit court reduce the County's "assessments that are in excess of said properties' actual value" in accordance with South Dakota law. Finally, he sought "recovery of excess taxes previously paid" along with costs and attorney fees.

[¶16.]     After holding a hearing to consider counsels' arguments on appeal, the circuit court issued an oral ruling and, thereafter, entered written findings of fact,

conclusions of law, and an order and judgment. In its written findings of fact, the court noted the OHE record contained no evidence that all properties in Roberts County had increased 10% in value since the last time the properties were properly appraised. The court also observed that the Director did not view or inspect Pirmantgen's properties before increasing the assessed values by 10%. The court concluded South Dakota law does not allow the Director to apply an across-the-board 10% increase without first taking into consideration the true and full value of each property. Therefore, the court set aside the 10% across-the-board adjustment.

[¶17.] The court also determined that multiple findings made by the hearing examiner were clearly erroneous and not supported by the record. In particular, it determined the record did not support the hearing examiner's finding that the Director considered the cost, market, and income approaches in valuing Pirmantgen's properties. The court quoted the Director's testimony that she did not compare Pirmantgen's properties to similar properties; did not use the income approach; did not use the cost approach with consideration for possible depreciation; and did not use the market approach in identifying the value of each property. The court found that the Director "instead relied on a fourth approach, one not authorized by statute, to increase the valuation of the subject properties by 10 percent from their prior year's assessment." Finally, the court concluded that any presumption of validity afforded to the County's assessments was lost because "the County failed to follow the statutory commands for assessing property."

[¶18.] In the judgment and order, the court reversed and modified the hearing examiner's decision. The court set aside the 10% market adjustment and

ordered the County to reassess Pirmantgen's properties in compliance with the court's order. In regard to "the tax year that is the subject of this appeal," the court ordered that six of Pirmantgen's properties be assessed at the values testified to by Valnes, thereby affirming the hearing examiner's valuation of three properties, but reversing and modifying the hearing examiner's valuation of the other three properties testified to by Valnes. For the remaining ten properties, the court ordered that their assessed values for the tax year at issue be modified to reflect the assessed values established by the County prior to the 10% market adjustment. Finally, the court directed the County to reimburse Pirmantgen for taxes collected in excess of the amounts that should have been collected.

[¶19.] The County appeals, asserting that the circuit court erred in reversing the hearing examiner's decision and in ordering the County to refund taxes to Pirmantgen.

### Standard of Review

[¶20.] Pirmantgen appealed the hearing examiner's decision to the circuit court under SDCL 10-11-43; therefore, the appeal before the circuit court and this Court are procedurally governed by SDCL chapter 1-26. In the appeal to this Court, "[w]e examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *Clarkson and Co. v. Harding Cnty.*, 1998 S.D. 74, ¶ 5, 581 N.W.2d 499, 501, *superseded by statute on other grounds*, SDCL 10-3-16. In doing so, we "accord great weight to the findings and inferences made by the hearing examiner on factual questions." *Butte Cnty. v. Vallery*, 1999 S.D. 142, ¶ 8, 602 N.W.2d 284, 287. "When the issue is a question of

law, the decisions of the administrative agency and the circuit court are fully reviewable." *Id.*

## Analysis and Decision

### 1. *Whether the circuit court erred in reversing and modifying the hearing examiner's decision.*

[¶21.] The County asserts the circuit court erred in concluding that it failed to properly value Pirmantgen's properties for tax assessment purposes. It contends the Director determined the full and true value of Pirmantgen's properties using the cost approach for the buildings via the Marshall & Swift program and the market approach for the land. The County further claims that because SDCL 10-3-41 requires the median level of assessment to be at least 85% of market value as determined by the Department of Revenue, the Director was authorized to increase the value of Pirmantgen's non-agricultural properties across the board by 10%. Finally, the County asserts Pirmantgen did not overcome the presumption that the County acted in accordance with the law when it assessed his properties for the 2018 tax year.[1]

[¶22.] In response, Pirmantgen contends the circuit court properly concluded that he overcame the presumption that the Director acted in accordance with the law when her own testimony showed "that she blatantly did not comply with the South Dakota Constitution or relevant South Dakota laws." He notes that the Director testified she did not value each property itself at a "price she believes the

---

1. Although we no longer presume that the Director of Equalization's actual valuation is correct, "the presumption that tax officials act in accordance with the law and not arbitrarily or unfairly when assessing property" remains. *Smith v. Tripp Cnty.*, 2009 S.D. 26, ¶ 14 n.7, 765 N.W.2d 242, 248 n.7.

property to be fairly worth in money[,]" did not view his properties, and did not consider the functional obsolescence of the properties. In his view, "the Director skipped a critical step before increasing the assessment ratio" under SDCL 10-3-41 when she failed to determine the true and full value of his properties as required by SDCL 10-6-33. Pirmantgen further claims that he produced evidence that the assessed value of the properties exceeds their true and full value.

[¶23.] The assessment of real property in South Dakota at its true and full value is both constitutionally and statutorily mandated. *See Smith v. Tripp Cnty.*, 2009 S.D. 26, ¶ 11, 765 N.W.2d 242, 246. Our Constitution provides that "[t]axes shall be uniform on all property of the same class, . . . and the valuation of property for taxation purposes shall never exceed the actual value thereof." S.D. Const. art. XI, § 2. By statute, "[a]ll property shall be assessed at its true and full value in money." SDCL 10-6-33. Further, under SDCL 10-6-2, "[a]ll real property subject to taxation shall be listed and assessed annually, but the value of such property is to be determined according to its value on the first day of November preceding the assessment." As we explained in *Sabow v. Pennington County*, "[t]he statute commands the director of equalization to appraise property *each year*." 500 N.W.2d 257, 260 (S.D. 1993).

[¶24.] To determine the true and full value of property, SDCL 10-6-33 provides:

> The director shall value each article or description by itself and at an amount or price as he believes the property to be fairly worth in money. The true and full value shall be determined by appropriate consideration of the cost approach, the market approach and the income approach to appraisal. The director of equalization shall consider and document all elements of such

-11-

approaches that are applicable prior to a determination of true and full value.

Further, under SDCL 10-6-36, "[t]he director of equalization shall actually view, when practicable, and determine the true and full value of each tract or lot of real property listed for taxation . . . ."

[¶25.] On review of an agency decision, the circuit court must "give great weight to the findings made and inferences drawn by an agency on questions of fact." SDCL 1-26-36. "The court may affirm the decision of the agency . . . [or] may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; . . . (5) Clearly erroneous in light of the entire evidence in the record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Id.* Finally, the circuit "court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment." *Id.*

[¶26.] A review of the record reveals the circuit court properly determined that the hearing examiner issued clearly erroneous findings related to the Director's general determination of the true and full value of Pirmantgen's properties for the 2018 tax year. The Director specifically testified that she did not value each property at an amount the properties would be worth if sold on the open market. She also admitted that she did not individually inspect Pirmantgen's properties, explaining that she plans to individually value all non-agricultural property in

Sisseton in 2021, including Pirmantgen's property, to arrive at a "more true and fair" assessment.

[¶27.]     In *Amert v. Lake County Board of Equalization*, we recognized "the increasing taxation burdens on counties to properly assess" properties within their borders. 1998 S.D. 66, ¶ 34, 580 N.W.2d 616, 623. And, here, the burden on the Director was particularly heightened because the properties within Roberts County had not been systematically reappraised since 1994 and 1995. However, the increased workload due to a lack of timely reappraisals does not excuse the Director of the statutory obligation to determine the true and full value of property before making an assessment. *See id.* Moreover, while the County may have, in a prior decade or some years ago depending on the property, considered one or more of the approaches required by SDCL 10-6-33 when valuing Pirmantgen's properties, that possibility does not support the hearing examiner's finding that the Director determined, at the time of assessment at issue here, the true and full value of Pirmantgen's properties as required by SDCL 10-6-33.[2]

[¶28.]     Further, although SDCL 10-3-41 requires the Director to make adjustments so that the median level of assessment is at least 85% of market value as determined by the Department of Revenue, nothing in that statute overrides the statutory requirement to first determine the true and full value of the taxpayer's

2.     It appears the County, in claiming that it determined the true and full value of Pirmantgen's properties, relies on the Marshall & Swift reports in the record and other documents related to Pirmantgen's properties. However, the Marshall & Swift reports were generated in most instances in the early 2000s, and there is no evidence that Director Gamber commissioned or created these reports for the 2018 tax year.

property under SDCL chapter 10-6. On the contrary, the language of SDCL 10-3-41 contemplates that the requisite valuation under SDCL 10-6-33 has been made before the Director determines whether an adjustment to those valuations is necessary under SDCL 10-3-41: "[t]he director of equalization shall make the necessary adjustments *to the valuations* before the notice of assessment" is transmitted or mailed. (Emphasis added.) As we noted in *Amert*, "[a]n assessor must consider each of the three approaches (cost, market, and income) to valuation *before* making an appraisal."[3] 1998 S.D. 66, ¶ 18, 580 N.W.2d at 619 (emphasis added). Therefore, the circuit court properly determined that the Director failed to act in accordance with the law in applying an across-the-board 10% increase without first valuing Pirmantgen's properties.

[¶29.]     However, to obtain relief, Pirmantgen was required "to show the assessed valuation was in excess of true and full value, lacked uniformity in the same class, or was discriminatory." *See Trask v. Meade Cnty. Comm'n*, 2020 S.D. 25, ¶ 36, 943 N.W.2d 493, 501 (quoting *Apland v. Bd. of Equalization for Butte Cnty.*, 2013 S.D. 33, ¶ 9, 830 N.W.2d 93, 97); *accord Smith*, 2009 S.D. 26, ¶ 16, 765 N.W.2d at 248; *Poindexter v. Hand Cnty. Bd. of Equalization*, 1997 S.D. 71, ¶ 26, 565 N.W.2d 86, 92. We have further held "that, notwithstanding any alleged deficiencies in the Director's assessment, the first question is whether [a taxpayer's]

---

3.     As it relates to the income approach, we have explained that "[a] taxpayer cannot be heard to complain on such a point when he has the exclusive access to the needed information and either gives incomplete figures, false figures or no figures at all to the assessor." *Amert*, 1998 S.D. 66, ¶ 28, 580 N.W.2d at 621. The Director testified that despite her request to Pirmantgen that he provide her the income information related to his rental properties, he never did so.

evidence constituted a prima facie showing of entitlement to relief," i.e., "that the Director's assessment was in excess of true and full value." *Smith*, 2009 S.D. 26, ¶ 16, 765 N.W.2d at 248. Further, "a taxpayer challenging excessive valuation must show more than a failure to comply with statutory mandates[.]" *Id.* ¶ 17 (citing *Knodel v. Bd. of Cnty. Comm'rs of Pennington Cnty.*, 269 N.W.2d 386, 390 (S.D. 1978)).

[¶30.] "True and full value" is defined for all real property as: "the usual cash selling price at the place where the property to which the term is applied shall be at the time of the assessment." SDCL 10-6-1(6). And SDCL 10-6-1.3 defines "full and true value" and "fair market value" to "mean the price in money that property will bring in a competitive and open market under all conditions requisite to a fair sale between a willing buyer and a willing seller, each acting prudently and with full knowledge of the relevant facts, and assuming the price is not affected by any undue stimulus." *See Yadco, Inc. v. Yankton Cnty.*, 89 S.D. 651, 655, 237 N.W.2d 665, 667 (1975) (noting that our decisions consider true and full value to mean "the amount a willing purchaser will pay a willing seller in an open market").

[¶31.] Here, Pirmantgen offered evidence through appraisals done by Valnes to show that the County's assessments were in excess of true and full value, but his evidence related only to six of the 16 properties at issue. Based on these appraisals, the hearing examiner granted Pirmantgen relief by lowering the County's assessments on three of the parcels (#5929, #14355, #4466) consistent with Valnes's appraisals, and also by lowering one other assessment (#2202), but not to the extent suggested by Valnes. The County did not appeal the hearing examiner's four

adjustments. The circuit court's order and judgment adopted the hearing examiner's adjusted valuations on the three parcels (#5929, #14355, #4466), but further reduced the hearing examiner's fourth adjusted valuation (#2202) by adopting Valnes's market value appraisal for this parcel. The court also modified the County's assessments as to the two parcels (#8426 and #6346) appraised by Valnes but not adjusted by the hearing examiner. Finally, as it relates to the remaining ten properties not testified to by Valnes and not adjusted by the hearing examiner, the court ordered that the properties be valued at the assessed values established by the County prior to the 10% market adjustment.

[¶32.]     Thus, the County assessments modified by the circuit court and at issue here because of the County's appeal to this Court are: (1) parcels #8426 and #6346 that were appraised by Valnes but not adjusted by the hearing examiner; (2) parcel #2202, which the hearing examiner adjusted, but not in accord with Valnes's appraisal; and (3) the other ten parcels on which Valnes did not express an opinion. The following table relates information for all 16 parcels.

| Parcel number | County Assessments after 10% increase | Valnes's Appraisals | Hearing Examiner Assessed Value | Circuit Court Assessed Value |
|---|---|---|---|---|
| 1307 | $36,542 | | | |
| 6023 | $30,479 | | | |
| 5929 | $37,104 | $20,000 | $20,000 | $20,000 |
| 14355 | $35,120 | $12,500 | $12,500 | $12,500 |
| 9052* | $19,908 | | | |
| 4092 | $36,660 | | | |
| 8426 | $44,976 | $18,000 | | $18,000 |
| 5898* | $31,940 | | | |
| 6346 | $18,865 | $20,000 | | $20,000 |
| 1357 | $27,792 | | | |
| 4062 | $25,808 | | | |

| 2202 | $27,380 | $16,000 | $22,000 | $16,000 |
|------|---------|---------|---------|---------|
| 4466 | $35,346 | $20,000 | $20,000 | $20,000 |
| 3400 | $12,906 | | | |
| 8391 | $27,602 | | | |
| 9192 | $32,346 | | | |

*These assessments reflect the Board of Equalization's reductions on #9052 because it was condemned by the City of Sisseton and on #5898 because of fire damage.

### a. Parcels #8426, #6346, and #2202

[¶33.]     With regard to these three parcels appraised by Valnes, the circuit court determined the hearing examiner clearly erred in rejecting Valnes's valuations for the simple reason that "the purchase price and assessed value are similar" for these parcels.  The court concluded the market value would be the more accurate manner to establish the value of these parcels, and therefore adopted Valnes's proposed valuations and ordered the County to assess the properties at these lower amounts for the tax year in question.  Notably, by adopting Valnes's appraisals, the circuit court actually *increased* the value of parcel #6346 to an amount higher than the County's assessed value, but Pirmantgen did not appeal any aspect of the circuit court's decision.  We further note that although the County broadly claims the circuit court erred in reversing the decision of the hearing examiner, the County has not argued in its appeal to this Court that the circuit court's adjustments to the valuations of these three parcels were erroneous.

[¶34.]     From our review, the circuit court properly concluded that the hearing examiner did not, in rejecting Valnes's market value appraisals, determine the true and full value of parcels #8426, #6346, and #2202 as contemplated by this Court's prior decisions or the statutory definitions.  Further, although the hearing examiner's reason for affirming the County's assessments (or in the case of parcel

#2202, adopting an outdated purchase value because it was closer to the County's assessment) is problematic on its own, it is even more so in light of the fact that the County's assessment did not in any respect arise out of an individual valuation of Pirmantgen's properties. Therefore, we affirm the circuit court's determination that the hearing examiner's valuations of these three parcels were clearly erroneous. We likewise affirm the circuit court's modification of the hearing examiner's decision to reflect the valuations of these parcels in accord with Valnes's appraisals.

### b. The ten remaining parcels

[¶35.]     The County claims the circuit court erred in reversing the hearing examiner's decision affirming the County's assessments on these ten parcels because Pirmantgen presented no evidence establishing that the County's assessments of these ten parcels were in excess of true and full value. In response, Pirmantgen makes only a general argument, as he did before the hearing examiner and the circuit court, that these ten properties were valued in excess of their true and full value. Yet, he acknowledged below that while some properties may have depreciated, others may have appreciated.

[¶36.]     We note that the circuit court entered a broad finding that "the burden of taxation [on Pirmantgen's] properties is not equitable, was in excess of its true and full value, lacked uniformity in the same class, and was discriminatory." However, the court did not explain in what manner the assessed valuations lacked uniformity or were discriminatory. Moreover, while Pirmantgen generally referred to uniformity while arguing his case, he did not present any *evidence* before the hearing examiner related to a lack of uniformity across the class of property at

issue. Pirmantgen's challenge to the propriety of the assessments centered upon whether they were in excess of true and full value, and we confine our review to that issue. *See Smith*, 2009 S.D. 26, ¶ 1 n.1, 765 N.W.2d at 243 n.1 (limiting analysis to whether the assessment exceeded true and full value when taxpayers did not argue "that the County's assessment lacked uniformity in class or was discriminatory").

[¶37.] As we stated in *Smith*, "a taxpayer challenging excessive valuation must show more than a failure to comply with statutory mandates[.]" 2009 S.D. 26, ¶ 17, 765 N.W.2d at 248 (citation omitted). Here, the hearing examiner properly cited authorities identifying the taxpayer's burden and accurately noted that the only evidence submitted on the values of these ten parcels came from the County. In reversing the hearing examiner's determination as to these properties, the circuit court failed to accord great weight to the examiner's finding that Pirmantgen did not meet his burden when he simply asserted that the valuations were in excess of true and full value. *See Vallery*, 1999 S.D. 142, ¶¶ 8–9, 602 N.W.2d at 287 (explaining that the circuit court is required to reverse only when the findings of the hearing examiner are clearly erroneous). Moreover, the circuit court did not point to any evidence in the record to support its determination that the County's assessments as to these ten properties exceeded true and full value. In fact, the circuit court acknowledged that just because the County had not reappraised the property values since 1994 and 1995, "that doesn't necessarily mean that the amounts that the [C]ounty's been using [are] wrong if other information provides or supports those findings as full and true value."

[¶38.] Without specific evidence related to the value of each individual property, there was no way for the circuit court to determine which properties appreciated in value consistent with the Director's market adjustment or which properties depreciated such that the County's assessments did not reflect the true and full value. Therefore, the circuit court erred in reversing the hearing examiner's decision as to these ten properties and in directing the County to reduce the assessments on these properties to the assessed values existing prior to the 10% increase.

### 2. *Whether the circuit court erred in ordering the County to refund taxes to Pirmantgen.*

[¶39.] The County asserts the circuit court exceeded its statutory authority when it directed the County to reimburse Pirmantgen for the difference between the amount of taxes he had paid and the amount of taxes he should have paid had his properties been properly assessed. The County notes that nothing indicates Pirmantgen had paid his 2018 taxes under protest as required by SDCL 10-27-2. It further contends that Pirmantgen's appeal to the circuit court only gave the circuit court such power as the hearing examiner would have had over the Board of Equalization's decision, which, according to the County, does not include the power to levy, collect, or refund taxes.[4]

---

4. In response, Pirmantgen asserts that SDCL 10-11-26(4) gives the circuit court authority to order reimbursement because that statute allows the Board to "[e]qualize between taxing districts and between classes of property." In Pirmantgen's view, "[i]ssuing a refund is a way to equalize Pirmantgen's taxes paid with the true and full value of other properties in his class." However, aside from the conclusory citation to the statute, Pirmantgen cites no authority to support this argument.

[¶40.]	In *Riverview Properties, Ltd. v. South Dakota State Board of Equalization*, we explained: "It is well settled that a circuit court's authority on an appeal from a county board of equalization or from the state board is the same as that which was initially possessed by the respective boards."  439 N.W.2d 820, 822 (S.D. 1989) (citing *Williams v. Stanley Cnty. Bd. of Equalization*, 69 S.D. 118, 7 N.W.2d 148 (1942); *In re Robinson et al.*, 73 S.D. 580, 582, 46 N.W.2d 908, 909 (1951)).  A Board of Equalization's powers are defined in SDCL 10-11-26 to include:

> (1) Make adjustments and corrections pursuant to § 10-11-61;
> (2) Correct clerical errors of the assessment roll;
> (3) Hear appeals from individuals regarding aggregate assessments, classification, and equalization; and
> (4) Equalize between taxing districts and between classes of property.  The board shall raise or lower, if necessary, each class of property on a percentage basis covering the class as a whole within the assessment district.

As the Court held in *Riverview Properties*, these powers do not give the Board the authority to levy, collect, or refund taxes.  439 N.W.2d at 822; *see generally* SDCL ch. 10-11 (chapter governing equalization, review, and correction of assessments).  "Thus, where the circuit court sits as a board of equalization pursuant to SDCL 10-11-43 or 10-11-44, it likewise does not have the power to levy, collect or refund taxes." *Riverview Properties*, 439 N.W.2d at 822.  Because the circuit court did not have the authority to order the refund of taxes, it erred in directing the County to reimburse Pirmantgen any taxes paid in excess of what should have been paid.[5]

---

5.	The Court has previously recognized that "[t]here are two exclusive methods by which an aggrieved taxpayer may seek recovery for alleged illegal taxes paid.  They are the Refund and Abatement Statute, SDCL 10-18-1, and the Protest and Suit Statute, SDCL 10-27-2." *Lick v. Dahl*, 285 N.W.2d 594, 599 (S.D. 1979); *see also Metropolitan Life Ins. Co. v. Kinsman*, 2009 S.D. 53, ¶ 18, 768 N.W.2d 540, 545.

*Appellate Attorney Fees*

[¶41.]    Pirmantgen petitioned this Court for an award of $6,949.70 in costs and appellate attorney fees and filed the requisite affidavit and itemized statement of legal services rendered.  He notes that attorney fees are authorized only "where such fees may be allowable[,]" *see* SDCL 15-26A-87.3, and that under SDCL 10-11-78, "the Supreme Court may award reasonable attorneys' fees in an action brought to the Supreme Court pursuant to this chapter against any appellant relative to the assessment of property, if the appellant does not prevail in its appeal of the property assessment."  Here, although the appellant—the County—prevailed in the sense that all but two of the hearing examiner's assessments are being affirmed, Pirmantgen also prevailed in upholding the circuit court's reduction of the County's assessment on one additional parcel.  Perhaps of more import in the long run, certainly from a prospective standpoint, is Pirmantgen's success in obtaining an affirmance by this Court of the circuit court's conclusion that the County's method of assessment applying an across-the-board 10% market adjustment was contrary to constitutional and statutory law.

[¶42.]    This Court has not before examined whether an appellee may recover a portion of the attorney fees incurred when the appellee only partially prevails in the appeal of a property assessment.  However, an award of fees is discretionary under SDCL 10-11-78, and Pirmantgen prevailed on a major issue—whether the Director of Equalization's assessment methodology was contrary to the statutory mandates.  Therefore, we award Pirmantgen $3,000 in attorney fees.  *See Crisman v. Determan*

*Chiropractic, Inc.*, 2004 S.D. 103, ¶ 23, 687 N.W.2d 507, 513 (noting that one need not "prevail on every issue to be the prevailing party").

[¶43.]    Affirmed in part and reversed in part.

[¶44.]    JENSEN, Chief Justice, and KERN and SALTER, Justices, and HANSON, Circuit Court Judge, concur.

[¶45.]    HANSON, Circuit Court Judge, sitting for GILBERTSON, Retired Chief Justice, disqualified.

[¶46.]    MYREN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.