#30306-r-PJD
**2024 S.D. 31**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

MELISSA K. PALMER,                                          Appellant,

v.

SOUTH DAKOTA DEPARTMENT
OF LABOR AND REGULATION,
REEMPLOYMENT ASSISTANCE
DIVISION,                                                          Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBIN J. HOUWMAN
Judge

\* \* \* \*

ERIC C. SCHULTE of
Davenport, Evans, Hurwitz
    & Smith, LLP
Sioux Falls, South Dakota                          Attorneys for appellant.


SETH A. LOPOUR
COURTNEY S. CHAPMAN of
Woods, Fuller, Shultz
    & Smith, P.C.
Sioux Falls, South Dakota                          Attorneys for appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 7, 2023
OPINION FILED **06/05/24**

#30306

DEVANEY, Justice

[¶1.]        An administrative law judge (ALJ) determined that Melissa Palmer willfully misrepresented facts to receive pandemic unemployment assistance benefits and ordered that she repay the benefits and be assessed a mandatory penalty under SDCL 61-6-39.  The circuit court affirmed the ALJ's decision, and on appeal to this Court, Palmer asserts that the ALJ erred in finding that she willfully misrepresented facts to obtain those benefits and in concluding that she was therefore subject to a penalty.  We reverse and remand.

**Factual and Procedural Background**

[¶2.]        When the COVID-19 pandemic began, Palmer was working two jobs— one as a self-employed sign-language interpreter and another as a retail salesperson at Woofs and Waves.  Although the pandemic did not affect Palmer's employment or hours of work at Woofs and Waves, it caused her income as a sign-language interpreter to disappear completely.  On April 17, 2020, she completed an online application for Pandemic Unemployment Assistance (PUA) through the South Dakota Department of Labor and Regulation, Reemployment Assistance Division (Department).  Under the section prompting her to include "Employer Information," she listed Woofs and Waves as an employer.  She answered, "Yes," to the question, "Still Working for This Employer?" and listed her hourly wage and the hours she worked the previous week.  Palmer also listed her self-employment as a sign-language interpreter under "Employer Information" and disclosed that she is no longer receiving income from that employment because the education settings where she had been providing those services closed.

-1-

[¶3.]        Under the "Eligibility" section, Palmer answered "On Call" in response to a question asking how much she worked in the last 18 months.  Under the "Availability" section, she answered, "Yes," to the question whether she is self-employed.  Thereafter, the application asked her multiple questions related to her self-employment, including questions about how many hours she worked and how many hours she would be willing to work each week.  Within this same section, she answered, "Yes," to the question, "Do you understand you need to report hours and any earnings each week that you apply for unemployment benefits the week in which the work was done regardless of when (if any) payment was received?"

[¶4.]        In a separate section, Palmer reported her wages for 2019 as $5,800 from being self-employed and $19,000 from Woofs and Waves.  The application also contained a section specific to her eligibility for PUA and asked her to select the type of employment she lost, to which she responded that she "was a contract worker."  It then asked her to "[c]heck the COVID-19 reason(s) as listed . . . that best describes your situation."  Palmer selected the reason indicating a significant reduction in her customary and usual services related to her self-employment.  She answered, "Yes," in response to a question whether "[i]f not for the COVID 19 pandemic, are you otherwise able to work and available for work?"  Following this question, the application included the following statement:

> Intentional misrepresentation is FRAUD.  Attempting to claim or collect payments by entering false information could mean a loss of benefits, fines, imprisonment and the inability to receive future benefits.  Please note the information you provide will be verified through matching programs and will be further investigated.

Palmer then affirmatively acknowledged the following statement:

I acknowledge I have read and understand the questions asked above.  I certify that I am otherwise able and available to work, except I am unemployed, partially unemployed, or unable or unavailable to work because of the listed COVID-19 reason(s) I choose above.  I understand that I am subject to administrative penalties, including penalties for perjury, or legal action if it is determined that I withheld or provided false information to obtain assistance payments to which I am not entitled.

[¶5.]    On April 30, 2020, the Department issued Palmer written notice that she is "monetarily eligible for a weekly benefit of $172" effective March 8, 2020.  The Department also sent Palmer a handbook detailing information about her "rights and responsibilities while filing a claim for reemployment assistance benefits."  The information in the handbook included a statement that Palmer was required to "report **all hours worked (to the nearest tenth of an hour) regardless of your employer's work week or pay period**, including self-employment (after expenses), even if you have not been paid."  (Bold in original.)  In a section on a deduction of benefits when one works part of the week, the handbook contained two subsections: "*Can I work part of the week and still be eligible for benefits?*"; and "*What if I am self-employed or working on a commission basis?*"  (Bold omitted; italics in original.)  Under the first subsection, the handbook provided:

You may be eligible for benefits if you continue to work.  In order to be eligible for partial benefits you must report your hours and earnings for the calendar week which you are filing for and **make an active search for work.**  Earnings will reduce your benefits.  Seventy-five percent of earnings over $25 will be deducted from your weekly amount.

- You will not be eligible for benefits if your gross earnings are equal to or more than your weekly benefit amount.
- You will not be eligible for benefits if you worked 40 hours or more, regardless of the amount of earnings.

(Bold in original.) The second subsection regarding those that are self-employed provided, in part, that: "You must accurately report any hours and earnings (after reasonable expenses) from self-employment."

[¶6.] The handbook further provided: "***Failure to correctly report your hours and earnings may result in an overpayment and a penalty. Your reported work and earnings are verified with your employer***." (Bold and italics in original.) It also contained a section titled, "PENALTIES FOR MISREPRESENTATION (Fraud)" and stated that "[i]f you committed fraud to secure or increase benefits, a penalty of 50 percent of the amount of benefits obtained by fraud is applied for the first offense and a 100 percent penalty is applied for each subsequent offense. A four week administrative penalty shall be imposed for each week that an individual willfully or fraudulently misrepresents a fact to secure or increase benefits."

[¶7.] In early May, the Department received Woofs and Waves' completed "EMPLOYER'S NOTICE OF BENEFIT CLAIM." In the box requesting that the employer circle one of three reasons the employee is no longer working (laid off, quit, fired), a representative from Woofs and Waves handwrote "still working." Also, in the section asking the employer to explain the reason the employee is no longer working, Woofs and Waves wrote that "Melissa is still working for us." Woofs and Waves identified that Palmer earns $11.20 per hour and worked 27 hours the previous week.

[¶8.] For Palmer to continue to receive PUA benefits, she was required to submit weekly requests and meet all eligibility requirements. From May 9, 2020 to

August 15, 2020, Palmer completed online, weekly requests for PUA benefits. In these online submissions, she answered "No," to the question, "Did you work during [the] week?" She also reported zero hours worked and zero earnings in all but three weeks. During the weeks ending May 30, August 8, and August 15, 2020, Palmer reported earnings over her $172 benefit amount and did not, therefore, receive PUA benefits for those weeks. In regard to all other weekly requests, Palmer received $172 in PUA benefits and, for some weeks, an additional $600 in federal pandemic unemployment compensation. According to the Department, Palmer received the $600 supplemental payment based on her eligibility for PUA benefits.

[¶9.]     It is undisputed that during each of the weeks Palmer requested PUA benefits, she had worked at Woofs and Waves and was paid her hourly rate. It is also undisputed that her earnings at Woofs and Waves during each of the reporting weeks exceeded her $172 benefit amount and thus made her ineligible for PUA benefits. After obtaining information from Woofs and Waves documenting Palmer's hours worked and earnings, the Department spoke with Palmer about her nondisclosure of her hours worked and earnings received. On May 27, 2021, the Department issued Palmer a written notice of overpayment, indicating that she must repay $8,664 in benefits. The notice identified that Palmer "failed to report [her] work/earnings" and was "not without fault[.]"

[¶10.]     Palmer appealed the Department's decision by submitting a letter to the Appeal Section of the Reemployment Assistance Division. In her letter, she stated that "[w]hen she filled out [her] application, [she] was completely transparent with [her] income." She indicated that in her application she had listed

what she was making from Woofs and Waves and was nevertheless "accepted to receive unemployment." She explained that she reported zero income in her weekly requests for assistance because she "assumed [she] didn't need to list [her] income from [her] retail position since [she had] listed that in the application" and she "was not receiving any other income during this time."

[¶11.] An administrative telephonic hearing was held on May 16, 2022. Palmer represented herself and it does not appear that an attorney appeared for the Department. Palmer and Jane Husman, a representative from the Department, testified during the hearing. The ALJ questioned both Husman and Palmer. During her testimony, Husman explained the details pertaining to Palmer's initial application for benefits, the Department's determination that she was eligible, the information (e.g., the handbook) the Department provided to Palmer, the submissions by Woofs and Waves, and the reason the Department subsequently determined that Palmer had not been eligible to receive the benefits previously paid to her.

[¶12.] Palmer testified that she recalled receiving and reading the handbook. She agreed that she had worked for an employer during the weeks she requested assistance and did not report those hours or earnings. However, she noted that she had reported her hours from Woofs and Waves on her application and testified that she knew her boss returned the form indicating that she is still working there. According to Palmer, "due to that, [her] assumption every week when [she] was applying for the benefits" was that "if [she] was either getting more work under [her] self-employment or if [she] was receiving any other work outside of [her]

reported income from Woofs and Waves that [she] initially reported in [her] application" she was required to report it. When the ALJ asked if she had any additional testimony she would like to be considered, Palmer stated,

> I was not trying to falsify any reporting. I was trying only to receive assistance due to my loss of work for my self-employment. . . .

[¶13.] After the hearing, the ALJ issued a written decision. The ALJ noted that when Palmer applied for PUA benefits, she reported her employment with Woofs and Waves and indicated that she was still working for that employer. The ALJ also noted that Palmer had received the handbook and had read the informational materials provided to her. In the findings of fact, the ALJ found that Palmer "thought that since her benefit claim was for her loss of self-employment that she only needed to report her work and earnings through self-employment."

[¶14.] The ALJ noted the applicable law, including that one is liable for repayment of benefits if the individual received benefits to which the individual was not legally entitled or for the amount received in the event of misrepresentation, and that the imposition of a penalty is authorized when benefits are obtained by willful or fraudulent misrepresentation. The ALJ then found that Palmer "failed to properly report work and earnings" during the reporting period. Based on her earnings, the ALJ determined she was not eligible for the benefits she received and was thus overpaid in the amount of $8,664.

[¶15.] The ALJ further found that Palmer was at fault, explaining that she "was aware that she worked for an employer during the weeks ending May 9, 2020 through August 1, 2020" and "knowingly reported inaccurate information to the

[Department] when filing her weekly requests for benefits for these weeks." In the ALJ's view, Palmer's "actions demonstrate that she willfully misrepresented facts for each of these weeks." As a result, the ALJ held that Palmer "is subject to a 26-week administrative penalty" and remanded the matter for the determination of the amount of the penalty.

[¶16.] Palmer then obtained counsel and appealed the ALJ's decision to the circuit court. After considering the parties' submissions and hearing counsel's arguments, the circuit court noted the ALJ's finding that Palmer thought that she needed to report only her self-employment work and earnings. However, the court determined that "[t]his finding is not inconsistent with the end result" because "it is simply a finding based upon what Palmer believed." The court affirmed the ALJ's decision, concluding that "Palmer has not shown that [the ALJ's] findings are clearly erroneous."

[¶17.] Palmer appeals, asserting that the ALJ erred in finding that she willfully misrepresented facts to obtain PUA benefits and that she was at fault in causing the overpayment.

## Standard of Review

[¶18.] SDCL 1-26-36 sets forth the applicable standard of review. *Bracken v. S.D. Dep't of Lab. and Reg., Reemployment Assistance Div.*, 2023 S.D. 22, ¶ 14, 991 N.W.2d 89, 92. Under that statute, "[w]e examine agency findings in the same manner as the circuit court to decide whether they were clearly erroneous in light of all the evidence." *Pirmantgen v. Roberts Cnty.*, 2021 S.D. 5, ¶ 20, 954 N.W.2d 718, 724 (alteration in original) (citation omitted). However, "[w]hen the issue is a

question of law, the decisions of the administrative agency and the circuit court are fully reviewable." *Id.* (citation omitted).

## Analysis and Decision

[¶19.] Palmer argues that a finding of willful or fraudulent misrepresentation under SDCL 61-6-39 requires evidence of an intent to deceive or other intentional conduct. Relying on this, she further argues that the ALJ erred in finding that she willfully misrepresented facts to obtain PUA benefits because, in her view, the evidence and ALJ's findings establish that she "simply made a mistake" when she did not report her earnings from Woofs and Waves in her weekly requests for benefits. She notes that the Department approved her application for benefits even with her reported employment at Woofs and Waves and that the ALJ specifically found that she "thought that since her benefit claim was for her loss of self-employment that she only needed to report her work and earnings through self-employment." She therefore requests reversal of the ALJ's imposition of a penalty under SDCL 61-6-39.

[¶20.] The Department contends that "[t]he focus on appeal should be whether the record supports a finding that [Palmer] *willfully* misrepresented facts to secure benefits" because "willfully" and "fraudulently" are separated by the disjunctive "or" and the ALJ did "not utilize the fraud standard or even find that [Palmer] committed fraud." (Emphasis added.) The Department notes that "willful" is not defined in Title 61. However, in the Department's view, the language in SDCL 61-6-38—that "[i]t is unlawful for any person to make a false statement or representation *knowing* it to be false or *knowingly* fail to disclose a

material fact to obtain or increase any benefits or other payments under this title"—gives "definitional structure" to the meaning of "willfully" in SDCL 61-6-39. (Emphasis added.) Then, using the language from SDCL 61-6-38, the Department argues that because Palmer was informed by the handbook that she needed to report all earnings and *knew* that she had income from Woofs and Waves during the reporting weeks but did not report it, the evidence supports the ALJ's determination that Palmer *willfully* misrepresented facts.

### What constitutes willful or fraudulent misrepresentation

[¶21.]     Relevant here, SDCL 61-6-39 provides:

> Any individual who has *willfully or fraudulently misrepresented* any fact to secure or increase benefits under this title shall be denied benefits for weeks of otherwise compensable unemployment, as defined in this chapter from and after the date such misrepresentation or fraudulent act is discovered in accordance with rules promulgated by the department pursuant to chapter 1-26.

(Emphasis added.)

[¶22.]     We have not before examined what is required to prove "willful" or "fraudulent" misrepresentation under SDCL 61-6-39, and neither term is defined in Title 61. However, in an insurance case, we considered whether the insured's misrepresentation was fraudulent. In examining this question, the Court noted that "to find fraud or false swearing . . . there must be '[a]n intent . . . and the general rule seems to be that the statement must be a willfully false one concerning some material matter, and made with the intent to deceive[.]'" *Auto-Owners Ins. Co. v. Hansen Hous., Inc.,* 2000 S.D. 13, ¶ 36, 604 N.W.2d 504, 514 (first alteration in original) (second omission in original) (citation omitted). While this language

suggests that fraud, as it relates to misrepresentations, requires both a willful

misrepresentation and the intent to deceive, we did not, in *Auto-Owners*, specifically

define what constitutes a *willfully* false statement. However, we did clarify what is

*not* willful. In particular, we noted that there could "be an *honest misstatement of*

*some fact*, and while, as a general rule, fraud and false swearing will avoid the

policy, *mere mistakes in stating facts* which do not in themselves annul its

conditions and do not appear to be wilful misrepresentations will not defeat the

action." *Id.* (emphasis added) (citation omitted).

[¶23.] In a different context, more specifically directed at conduct that is

considered *willful*, we stated that evidence of *willful* misconduct "entails a mental

element." *Fischer v. City of Sioux Falls*, 2018 S.D. 71, ¶ 9, 919 N.W.2d 211, 215

(citation omitted) (addressing what constitutes reckless, willful, or wanton

misconduct as opposed to merely negligent conduct). We further noted that "while

'[w]*illful* and wanton misconduct is not identical to *intentional* conduct,' willful and

wanton misconduct does 'partake[ ] to some appreciable extent . . . of the nature of a

deliberate and intentional wrong.'" *Id.* (alterations and omission in original)

(emphasis added) (internal citation omitted).

[¶24.] This Court has further defined what constitutes willful misconduct in

the context of punitive damages and workers' compensation cases. We said that

*willful* or wanton conduct are acts "conceived in the spirit of mischief or criminal

indifference to civil obligations." *Fluth v. Schoenfelder Const., Inc.*, 2018 S.D. 65,

¶ 32, 917 N.W.2d 524, 534. And in workers' compensation cases, we described

*willful* misconduct as "serious, deliberate, and intentional[.]" *Holsher v. Valley Queen Cheese Factory*, 2006 S.D. 35, ¶ 48, 713 N.W.2d 555, 567–68.

[¶25.]     Notably, Black's Law Dictionary similarly defines "willfulness" as: "[t]he quality, state, or condition of acting purposely or by design" and "[t]he voluntary, intentional violation or disregard of a known legal duty." Black's Law Dictionary (11th ed. 2019). It further notes that willfulness "involves more than just knowledge." *Id.* Therefore, contrary to the Department's suggestion, the *knowing* language in SDCL 61-6-38—a statute that imposes criminal penalties— does not provide "definitional structure" to the meaning of *willfully* as used in SDCL 61-6-39. In fact, the Legislature did not incorporate SDCL 61-6-38 into SDCL 61-6-39, and these two statutes use different terminology, presumably by design.*

[¶26.]     Because the term "willful" is consistently regarded as requiring evidence of something done deliberately, we conclude that for a misrepresentation to be *willful* under SDCL 61-6-39, there must be evidence that the claimant intentionally misrepresented facts to obtain benefits and not simply that the claimant had knowledge or constructive knowledge of the falsity of the representation.

---

*     In the criminal code, "knowingly" is defined as "knowledge that the facts exist which bring the act or omission within the provisions of any statute" but "[k]nowledge of the unlawfulness of such act or omission is not required[.]" SDCL 22-1-2(1)(c). In contrast, the terms "willfully" and "fraudulently" in SDCL 61-6-39 require a higher *mens rea* before civil penalties may be imposed.

### *Whether the ALJ erred in finding Palmer willfully misrepresented facts*

[¶27.] To determine whether the ALJ erred in concluding that there was a willful misrepresentation here, we must address the import of the ALJ's finding that Palmer "read the informational materials but thought that since her benefit claim was for her loss of self-employment that she only needed to report her work and earnings through self-employment." Palmer contends this finding is critical to this Court's appellate review because a finding that Palmer believed she needed to report only her self-employment income equates to a finding that she did not act willfully when she did not disclose her wages from Woofs and Waves. The Department, in contrast, argues that it was not an actual finding by the ALJ on Palmer's credibility or intent. Rather, in the Department's view, the ALJ's finding was "nothing more than" the ALJ "reciting [Palmer's] testimony." The Department further contends that to conclude otherwise would mean any claimant "need only testify that he or she believed something else and that is sufficient to escape the statutorily required administrative penalty under SDCL § 61-6-39."

[¶28.] On the contrary, the mere fact a claimant testifies to a mistaken belief does not mean that the ALJ must accept the claimant's testimony as true or credible. As this Court has explained, "[t]he reviewing agency 'is not required to accept the testimony of the claimant and is free to choose between conflicting testimony.'" *Johnson v. Albertson's*, 2000 S.D. 47, ¶ 26, 610 N.W.2d 449, 455 (citation omitted). Moreover, although the ALJ could have written its findings as merely reciting the testimony presented, the ALJ did not use language in this finding that would suggest it was merely restating Palmer's testimony or claims

(e.g., "Palmer testified . . ."; or "Palmer claims . . ."). And, importantly, the ALJ did not issue a correlating finding that Palmer's statement as to her belief was not credible or that it was rejecting her testimony in any regard. Thus, the ALJ's finding reflects its determination as to what Palmer believed.

[¶29.] Because the ALJ found that Palmer believed she only needed to report her income from self-employment, it was inconsistent and irreconcilable to thereafter conclude that Palmer willfully misrepresented facts to obtain PUA benefits. The ALJ in essence found that Palmer was operating under a mistaken view of her reporting requirements, and as the Court in *Auto-Owners* indicated, an honest misstatement of fact is not a willful misrepresentation. *See* 2000 S.D. 13, ¶ 36, 604 N.W.2d at 514. Further, although the ALJ determined that Palmer "knowingly reported inaccurate information to the [Department] when filing her weekly requests for benefits for these weeks[,]" the ALJ based this statement on Palmer being "*aware* that she worked" for Woofs and Waves during the reporting period. (Emphasis added.) Yet, Palmer's failure to report this income despite her knowledge that she worked during this timeframe does not evince that she acted willfully because the ALJ specifically found that Palmer thought that she only needed to report what she earned from self-employment.

[¶30.] Similarly, the ALJ's finding that Palmer was informed via the Department's handbook that her benefits would be reduced for a given week if she has earnings for working part of that week and she would not be eligible for benefits for weeks in which her gross earnings exceed her weekly benefit amount goes more to what type of constructive knowledge she may have had. It does not lead to a

determination that Palmer willfully misrepresented facts when, as the ALJ's findings establish, she was operating on an honest mistake regarding what she needed to report.

[¶31.]    While not controlling, an Arkansas court of appeals, in an analogous case, reversed a decision finding that the claimant willfully made a false statement or misrepresentation of material fact when filing her claim for benefits. *McPherson v. Div. of Workforce Servs.*, 640 S.W.3d 653 (Ark. Ct. App. 2022). McPherson, a single mother who worked at a deli, told her manager that she would be unable to work her shift because her child's school had closed due to the COVID-19 pandemic and there was no one else who could care for her child. McPherson testified that her manager told her, "Do not worry about it, don't come back." *Id.* at 655. Because he did not tell her that she was fired and she did not quit, she thought there might be a possibility that she could eventually go back to work. However, she did not ultimately return to work, and as a result applied for unemployment benefits. In her application, she checked the box stating that she had been "Laid Off/Lack of Work." *Id.* A review board determined that she willfully made a false statement or misrepresentation of material fact to obtain benefits. *Id.*

[¶32.]    On appeal, the court noted that the word "willful" is not defined in Arkansas's unemployment compensation statutes and then concluded that "there must be an element of intent" and "an intentional or deliberate violation[.]" *Id.* at 656. The court found that while McPherson's representation in her application may not have been accurate, the circumstances surrounding her "separation are not altogether clear." *Id.* The court also considered McPherson's explanation that she

checked the "Laid Off/Lack of Work" box because "'[she] wasn't sure if [she] was technically fired or if there was a possibility of [her going] back to work.'" *Id.* (alterations in original). Because the evidence did not support the reviewing board's finding that McPherson willfully made a false statement or misrepresentation of material fact on her application, the court reversed the matter. *Id.*

[¶33.] So too here, although Palmer did not report her earnings at Woofs and Waves, the ALJ's findings reflect that her failure to do so was a result of her belief that the questions in the weekly requests for benefits pertained only to any self-employment income she had earned. Notably, the Department does not assert that the ALJ's finding as to Palmer's belief is clearly erroneous. Even if it had, a review of the record and the ALJ's additional findings support that Palmer reasonably believed that she did not need to report her earnings from Woofs and Waves. As the ALJ found, Palmer identified Woofs and Waves as a current employer in her application for PUA benefits. She also indicated that she was still working for Woofs and Waves; identified her weekly hours worked and wage; and stated that her hours there had not been reduced. Further, Palmer was aware that Woofs and Waves would be reporting her hours and wages to the Department. Finally, she requested PUA benefits only for her loss of income as a sign-language interpreter and ultimately received notification from the Department that she was entitled to PUA benefits despite her reported earnings from Woofs and Waves.

[¶34.] Based on the record before the ALJ and the specific finding that Palmer thought she needed only to report her self-employment income, the ALJ clearly erred by finding that Palmer willfully misrepresented facts to obtain PUA

benefits and ordering her to pay a mandatory penalty under SDCL 61-6-39. We therefore reverse the circuit court's rulings to the contrary.

### *Whether Palmer was at fault for the overpayment*

[¶35.] Separate from her request that this Court find she need not pay a penalty to the Department, Palmer also requests, in her concluding paragraph, that we reverse the ALJ's determination that she was "at fault" for causing the overpayment and remand the matter back to the ALJ "for a determination as to whether she is eligible for a waiver." The Department's brief on appeal contains one sentence in reply: "Because Claimant misrepresented facts to secure benefits, she is ineligible for a waiver and a remand for such would be improper."

[¶36.] Although the ALJ issued a specific ruling that Palmer was at fault in receiving the overpayment of PUA benefits, we cannot ascertain whether this ruling was based solely on the ALJ's determination that Palmer's inaccurate reporting was done willfully. Having concluded that the ALJ erred in its determination that Palmer willfully misrepresented facts to obtain PUA benefits, we remand for the ALJ to either clarify or reconsider the "at fault" determination and whether Palmer is eligible for a waiver under the governing rules. *See* SDCL 61-6-42 (providing that the Department may waive the right of recovery of benefits under certain conditions, including that the claimant was not at fault, according to rules promulgated pursuant to chapter 1-26); ARSD 47:06:04:22 (setting forth the conditions that must exist before the department may waive overpayment).

[¶37.] Reversed and remanded.

#30306

[¶38.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.